No. 22-1557

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

————————————

PATRICK ATKINSON,

Plaintiff-Appellant,

v.

MERRICK B. GARLAND, Attorney General of the United States and
MARVIN G. RICHARDSON, Acting Director of the Bureau of Alcohol,
Tobacco, Firearms and Explosives,

Defendants-Appellees.

————————————

On Appeal from the United States District Court
for the Northern District of Illinois, No. 1:21-cv-291 (Blakey, J.)

————————————

## BRIEF FOR APPELLEES

————————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

JOHN R. LAUSCH, JR.
  *United States Attorney*

MARK B. STERN
MICHAEL S. RAAB
STEVEN H. HAZEL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7217*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2498*

# TABLE OF CONTENTS

**<u>Page</u>**

STATEMENT OF JURISDICTION.............................................................1

STATEMENT OF THE ISSUE ................................................................1

PERTINENT STATUTES AND REGULATIONS ...................................1

STATEMENT OF THE CASE ..................................................................1

    A.    Statutory Background.............................................................1

    B.    Factual Background and Prior Proceedings.........................2

SUMMARY OF ARGUMENT .................................................................5

STANDARD OF REVIEW.......................................................................8

ARGUMENT ...........................................................................................8

The District Court Correctly Rejected Atkinson's Constitutional
    Challenge................................................................................8

    A.    Atkinson Falls Within a Class of Individuals Who the
        Supreme Court has Determined Retain No Second
        Amendment Rights ...............................................................9

    B.    The Historical Record Confirms that Applying 18
        U.S.C. § 922(g)(1) to Atkinson Does Not Implicate the
        Second Amendment.............................................................13

    C.    Atkinson's Arguments Conflict with Binding Precedent .....16

CONCLUSION ......................................................................................23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                               **Page(s)**

*Binderup v. Attorney Gen. U.S.*,
   836 F.3d 336 (3d Cir. 2016) ............................................................ 14, 19

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ............................................. 3, 5, 7, 8, 9, 13, 17, 19

*East Coast Entm't of Durham, LLC v. Houston Cas. Co.*,
   31 F.4th 547 (7th Cir. 2022) .................................................................. 8

*Folajtar v. Attorney Gen. of the U.S.*,
   980 F.3d 897 (3d Cir. 2020) ............................................................ 11, 15

*Hamilton v. Pallozzi*,
   848 F.3d 614 (4th Cir. 2017) ............................................................... 11

*Hatfield v. Barr*,
   925 F.3d 950 (7th Cir. 2019) ....................................... 4, 6, 7, 11, 17, 21

*Hatfield v. Sessions*,
   322 F. Supp. 3d 885 (S.D. Ill. 2018) .............................................. 21, 22

*Kanter v. Barr*,
   919 F.3d 437 (7th Cir. 2019) ....... 4, 5, 6, 7, 10, 13, 14, 16, 17, 18, 20, 21

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010) ............................................................................. 9

*Medina v. Whitaker*,
   913 F.3d 152 (D.C. Cir. 2019) ................................. 10, 11, 15, 16, 19, 20

*New York State Rifle & Pistol Ass'n v. Bruen*,
   142 S. Ct. 2111 (2022) ................................................. 7, 8, 9, 12, 13, 17

*Pontarelli v. U.S. Dep't of the Treasury*,
   285 F.3d 216 (3d. Cir. 2002) ............................................................... 21

*Richardson v. Ramirez,*
    418 U.S. 24 (1974) ............................................................. 14

*Spencer v. Kemna,*
    523 U.S. 1 (1998) ............................................................... 14

*Tyler v. Hillsdale Cty. Sheriff's Dep't,*
    837 F.3d 678 (6th Cir. 2016) ............................................. 15

*United States v. Britton,*
    289 F.3d 976 (7th Cir. 2002) .............................................. 22

*United States v. Emerson,*
    270 F.3d 203 (5th Cir. 2001) .............................................. 10

*United States v. Leahy,*
    464 F.3d 773 (7th Cir. 2006) .............................................. 22

*United States v. McCane,*
    573 F.3d 1037 (10th Cir. 2009) .......................................... 10

*United States v. Rozier,*
    598 F.3d 768 (11th Cir. 2010) ............................................ 10

*United States v. Scroggins,*
    599 F.3d 433 (5th Cir. 2010) .............................................. 10

*United States v. Skoien,*
    614 F.3d 638 (7th Cir. 2010) ............................... 6, 13, 14, 19

*United States v. Torres-Rosario,*
    658 F.3d 110 (1st Cir. 2011) .............................................. 21

*United States v. Yancey,*
    621 F.3d 681 (7th Cir. 2010) ................................... 6, 13, 18

**Statutes:**

18 U.S.C. § 921(a)(20) ............................................................. 2

18 U.S.C. § 921(a)(20)(A)...................................................................2

18 U.S.C. § 921(a)(20)(B)...................................................................2

18 U.S.C. § 922(g)(1)........................................... 1, 3, 5, 9, 10, 13

18 U.S.C. § 925(c) ............................................................................20

18 U.S.C. § 1341 .............................................................................1, 2

28 U.S.C. § 1865(b)(5)......................................................................14

**Legislative Materials:**

H.R. Rep. No 102-618 (1992)............................................................20

H.R. Rep. No 104-183 (1995)............................................................20

**Other Authorities:**

John D. Bessler,
   *Cruel & Unusual: The American Death Penalty and the Founders'
   Eighth Amendment* (2012) ..............................................................15

Thomas Herty,
   *A Digest of the Laws of Maryland* (1799)...........................................15

2 *Laws of the State of New York* (1791) .................................................15

1 *The Laws of the Commonwealth of Massachusetts* (1807) ..................15

## STATEMENT OF JURISDICTION

Plaintiff's jurisdictional statement is complete and correct.

## STATEMENT OF THE ISSUE

Federal law prohibits the possession of firearms by felons.  *See* 18 U.S.C. § 922(g)(1).  Plaintiff Patrick Atkinson is subject to that prohibition because he was convicted of mail fraud under 18 U.S.C. § 1341, a federal felony punishable by up to twenty years of imprisonment.  The issue presented is whether the district court correctly rejected Atkinson's as-applied Second Amendment challenge to § 922(g)(1).

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Statutory Background

Federal law has long restricted the possession of firearms by certain categories of individuals.  One such disqualification, 18 U.S.C. § 922(g)(1), generally prohibits the possession of firearms by any person "who has been convicted in any court of[] a crime punishable by

imprisonment for a term exceeding one year," the traditional definition of a felony.

For purposes of § 922(g)(1), "[t]he term 'crime punishable by imprisonment for a term exceeding one year' does not include" a "State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less."  18 U.S.C. § 921(a)(20)(B).  It also excludes "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored."  *Id*. § 921(a)(20).[1]

## B.    Factual Background and Prior Proceedings

**1.** Plaintiff Patrick Atkinson pleaded guilty in 1998 to felony mail fraud, a crime punishable by up to twenty years of imprisonment.  *See* 18 U.S.C. § 1341.  At the time of the offense, Atkinson owned an executive recruiting firm that collected fees from companies who hired candidates Atkinson recommended.  SA15.[2]  Atkinson defrauded a

---

[1] Congress also excluded any "Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices."  18 U.S.C. § 921(a)(20)(A).

[2] This brief uses the designation "SA" to refer to the short appendix filed with Atkinson's opening brief.

client company by paying $6,000 to a company insider involved in hiring one of his candidates. SA15-16. As punishment, Atkinson was sentenced to six months of home confinement, two years of probation, and a $15,000 fine. SA16. Atkinson also paid $45,000 to settle a civil fraud claim brought by the company he defrauded. SA16. As a result of his federal felony conviction, Atkinson is subject to 18 U.S.C. § 922(g)(1)'s prohibition on the possession of firearms.

**2.** Atkinson filed suit in the United States District Court for the Northern District of Illinois seeking a declaration and injunctive relief directing that he be permitted to lawfully possess firearms notwithstanding his felony conviction. Atkinson acknowledged that he is barred from doing so by § 922(g)(1), SA20, but asserted that the statute is unconstitutional as applied to him.

The district court dismissed the complaint, explaining that "the Supreme Court and the Seventh Circuit have consistently sanctioned categorical bans against felons like Atkinson." SA11. The court first observed that in *District of Columbia v. Heller*, the Supreme Court defined the Second Amendment as protecting only "law-abiding citizens." SA6 (quoting 554 U.S. 570, 595, 625, 626-27 (2008)). The

court then highlighted the Seventh Circuit's recognition that "a person convicted of fraud is not the sort of law-abiding, responsible citizen to whom *Heller* referred." SA7 (quoting *Hatfield v. Barr*, 925 F.3d 950, 951 (7th Cir. 2019)). The court concluded that in combination, these precedents establish that Atkinson's Second Amendment claim "plainly lacks merit." SA2.

The district court rejected Atkinson's claim that he should be treated differently from other felony mail fraud offenders, emphasizing that Circuit precedent "foreclose[s]" the "individualized assessment of character that Atkinson seeks." SA9 (citing *Kanter v. Barr*, 919 F.3d 437, 448 (7th Cir. 2019)). In any event, the court "reject[ed] Atkinson's suggestion that any individualized assessment would help him." SA10. The court explained that Atkinson is "materially identical" to the felony fraud offender in *Hatfield*, SA9, who the Seventh Circuit identified as falling outside the class of "law-abiding, responsible citizen[s]" the Second Amendment protects, *Hatfield*, 925 F.3d at 951. For that reason, "Atkinson's claim that he is somehow special lacks merit," and "he is no more entitled to possess a firearm than . . . any other convicted felon." SA11.

## SUMMARY OF ARGUMENT

Congress has prohibited the possession of firearms by persons "convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Plaintiff Patrick Atkinson is subject to that prohibition because he was convicted of felony mail fraud punishable by imprisonment for up to twenty years. The district court correctly rejected Atkinson's as-applied Second Amendment challenge to his federal firearms prohibition.

Application of § 922(g)(1) to Atkinson does not implicate the Second Amendment's protection of "the right of law-abiding, responsible citizens to use arms." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). The Supreme Court has recognized that the Second Amendment allows a "variety" of firearms regulations, including "longstanding prohibitions on the possession of firearms by felons." *Id.* at 626, 636. As this Court has observed, mail fraud constitutes a "serious federal felony for conduct broadly understood to be criminal." *Kanter v. Barr*, 919 F.3d 437, 450 (7th Cir. 2019). Thus, "a person convicted of fraud is not the sort of law-abiding, responsible citizen" the

Second Amendment protects. *Hatfield v. Barr*, 925 F.3d 950, 951 (7th Cir. 2019).

Even if the Supreme Court had not already defined the Second Amendment in a way that excludes Atkinson, a review of the historical record would require the same result. As this Court has twice suggested and as "most scholars of the Second Amendment" have confirmed, felons "were not historically understood to have Second Amendment rights." *Kanter*, 919 F.3d at 445-46, 446 n.6 (quoting *United States v. Yancey*, 621 F.3d 681, 684 (7th Cir. 2010) (per curiam)). That is true both with respect to felons generally and with respect to fraud offenders specifically. The founders classified crimes analogous to fraud—including forgery, counterfeiting, and embezzlement—as felonies punishable not just by disarmament but by death, a sure sign that the perpetrators forfeited the right to bear arms.

Although Atkinson asserts that his "personal circumstances" distinguish him from other felony fraud offenders, Br. 19, Circuit precedent precludes the individualized comparison Atkinson seeks, *see United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (en banc). In any event, such a comparison would be unavailing. Atkinson's claim to

6

relief is even weaker than that of the plaintiff in *Hatfield*, who committed a less financially significant form of fraud than Atkinson, maintained a clean record for longer than Atkinson alleges he has, and was nonetheless excluded from the class of "law-abiding, responsible citizen[s]" covered by the Second Amendment.  925 F.3d at 951.

The Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), confirms that Atkinson's claim lacks merit.  *Bruen* held that the Second Amendment's scope hinges not on the application of heightened scrutiny but on "this Nation's historical tradition of firearm regulation."  *Id*. at 2126. Drawing on that tradition, *Heller* recognized—and *Bruen* reiterated— that the right to bear arms belongs only to "law-abiding, responsible citizens."  *Id*. at 2131 (quoting *Heller*, 554 U.S. at 635).  And as Justice Kavanaugh and the Chief Justice emphasized in concurrence, *Bruen* leaves undisturbed the Court's previous approval of "longstanding prohibitions on the possession of firearms by felons."  *Id*. at 2162. Atkinson's conviction for mail fraud, "a serious federal felony," thus removes him from the Second Amendment's protection.  *Kanter*, 919 F.3d at 450.

7

## STANDARD OF REVIEW

The Court reviews the district court's grant of a motion to dismiss de novo.  *See East Coast Entm't of Durham, LLC v. Houston Cas. Co.*, 31 F.4th 547, 550 (7th Cir. 2022).

## ARGUMENT

### The District Court Correctly Rejected Atkinson's Constitutional Challenge

The Constitution protects an individual right to keep and bear arms, but, "[l]ike most rights, the right secured by the Second Amendment is not unlimited."  *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).  The Supreme Court has described a "variety" of firearm regulations—including "longstanding prohibitions on the possession of firearms by felons"—as consistent with the Second Amendment.  *Id.* at 626, 636; *see New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2162 (2022) (Kavanaugh, J., joined by Roberts, C.J., concurring) (reiterating that "longstanding prohibitions on the possession of firearms by felons" are constitutional).  In identifying additional categories of lawful restrictions, courts look to "this Nation's historical tradition of firearm regulation."  *Bruen*, 142 S. Ct. at 2126 (majority op.).

### A.    Atkinson Falls Within a Class of Individuals Who the Supreme Court has Determined Retain No Second Amendment Rights

The Supreme Court in *Heller* defined the right to bear arms as limited to "law-abiding, responsible citizens."  554 U.S. at 635.  Consistent with that definition, the Court cautioned that "nothing in [its] opinion should be taken to cast doubt" on "longstanding prohibitions on the possession of firearms by felons."  *Id.* at 626.  The Court described these "permissible" measures as falling within "exceptions" to the protected right to bear arms.  *Id.* at 635.  In *McDonald v. City of Chicago*, a plurality of the Court "repeat[ed]" its "assurances" that *Heller*'s holding "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'"  561 U.S. 742, 786 (2010) (quoting *Heller*, 554 U.S. at 626).  And just this year, the Court confirmed yet again that the right to keep and bear arms belongs only to "law-abiding" citizens.  *Bruen*, 142 S. Ct. at 2122.

Atkinson's felony mail-fraud conviction places him outside the Second Amendment's scope.  As several courts of appeals have recognized, any offense serious enough to satisfy 18 U.S.C. § 922(g)(1)—

which encompasses "crime[s] punishable by imprisonment for a term exceeding one year"—necessarily excludes the perpetrator from the class of law-abiding citizens protected by the Second Amendment. *See, e.g.*, *United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009); *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010) ("reaffirm[ing]" the Fifth Circuit's pre-*Heller* jurisprudence holding "that criminal prohibitions on felons (violent or nonviolent) possessing firearms did not violate" the Second Amendment (citing *United States v. Emerson*, 270 F.3d 203, 260-61 (5th Cir. 2001))). Indeed, "no circuit" has ever "held [18 U.S.C. § 922(g)(1)] unconstitutional as applied" to fraud or any other offense that the relevant jurisdiction has labeled a felony. *Medina v. Whitaker*, 913 F.3d 152, 155 (D.C. Cir. 2019).

This Court's precedent establishes that felony fraud offenders in particular retain no Second Amendment rights. As the Court observed in *Kanter v. Barr*, mail fraud is "a serious federal felony for conduct broadly understood to be criminal." 919 F.3d 437, 451 (2019). The Court reiterated in *Hatfield v. Barr* that fraud "is a thought-out crime that demonstrates disdain for the rights of others and disrespect for the

10

law." 925 F.3d 950, 951 (7th Cir. 2019). Those features of the crime reflect that fraud offenders cannot be trusted to complete background checks accurately, use firearms responsibly, or store them safely. Thus, "a person convicted of fraud is not the sort of law-abiding, responsible citizen to whom *Heller* referred." *Id*.

Every other court of appeals to consider this issue has agreed that felony fraud offenders are not "law-abiding, responsible citizens entitled to the protections of the Second Amendment." *Medina*, 913 F.3d at 154. The D.C. Circuit recognizes "felony fraud" as a "serious crime" removing the perpetrator from the Second Amendment's scope. *Id*. at 160. The Fourth Circuit likewise categorizes "[t]heft, fraud, and forgery" as "significant offenses" that "reflect[] disrespect for the law" and therefore justify disarmament. *Hamilton v. Pallozzi*, 848 F.3d 614, 627 (4th Cir. 2017). Similarly, the Third Circuit deems a conviction for fraud or any other felony "generally conclusive evidence" that the offender has forfeited the right to bear arms. *Folajtar v. Attorney Gen. of the U.S.*, 980 F.3d 897, 910 (3d Cir. 2020).

The Supreme Court's recent decision in *Bruen* reinforces the conclusion that § 922(g)(1) permissibly disarms felons. *Bruen*

11

repeatedly defines the Second Amendment as limited to "law-abiding" citizens.  142 S. Ct. at 2122, 2125, 2131, 2133, 2134, 2138, 2150, 2156. Consistent with that principle, while *Bruen* invalidated New York's "may issue" licensing regime, it approved "shall-issue" regimes that "require applicants to undergo a background check or pass a firearms safety course."[3]  *Id*. at 2138 n.9; *see id*. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("[S]hall-issue licensing regimes are constitutionally permissible[] . . . .").  In reaching that result, the Court had no need to analyze the history of shall-issue licensing regimes. Instead, the Court explained that such regimes generally pass constitutional muster because they "are designed to ensure only that those bearing arms . . . are, in fact 'law-abiding, responsible citizens.'" *Id*. at 2138 n.9 (majority op.).  That reasoning underscores that § 922(g)(1), which likewise aims to ensure that "those bearing arms" are

---

[3] A "shall issue" regime is one in which "authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements."  *Bruen*, 142 S. Ct. at 2123.  By contrast, a "may issue" regime vests "authorities [with] discretion to deny concealed-carry licenses even when the applicant satisfies the statutory criteria."  *Id*. at 2124.

"law-abiding, responsible citizens," accords with the Second

Amendment.  *Id.* (quoting *Heller*, 554 U.S. at 635).

> **B.  The Historical Record Confirms that Applying 18 U.S.C. § 922(g)(1) to Atkinson Does Not Implicate the Second Amendment**

Even if the Supreme Court had not already defined the Second

Amendment in a way that excludes Atkinson, a review of "this Nation's

historical tradition of firearm regulation" would compel the same

conclusion.  *Bruen*, 142 S. Ct. at 2126.

As this Court has suggested, all "nonviolent felons" were "excluded

from firearm possession at the time of the founding."  *Kanter*, 919 F.3d

at 445-46 (citing *United States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir.

2010) (per curiam)).  "*Heller* identified . . . as a 'highly influential'

'precursor' to the Second Amendment the Address and Reasons of

Dissent of the Minority of the Convention of the State of Pennsylvania

to Their Constituents."  *United States v. Skoien*, 614 F.3d 638, 640 (7th

Cir. 2010) (en banc) (quoting *Heller*, 554 U.S. at 604).  That report

recognized the permissibility of imposing a firearms disability on

convicted criminals, stating that "citizens have a personal right to bear

arms 'unless for crimes committed, or real danger of public injury.'"  *Id.*

In a similar vein, "[m]any of the states, whose own constitutions entitled their citizens to be armed, did not extend this right to persons convicted of crime." *Id.* Drawing on these and other sources, "most scholars" have concluded that "nonviolent felons . . . fall outside the scope of the Second Amendment." *Kanter*, 919 F.3d at 446 & n.6.

In this respect, the right to bear arms is analogous to civic rights that have historically been subject to forfeiture by individuals convicted of crimes, including the right to vote, *see Richardson v. Ramirez*, 418 U.S. 24, 56 (1974), the right to serve on a jury, 28 U.S.C. § 1865(b)(5), and the right to hold public office, *Spencer v. Kemna*, 523 U.S. 1, 8-9 (1998).[4] *See Binderup v. Attorney Gen. U.S.*, 836 F.3d 336, 349 (3d Cir. 2016) (en banc) ("[P]ersons who have committed serious crimes forfeit the right to possess firearms [in] much the way 'they forfeit other civil liberties.'"). Just as Congress and the States have required persons convicted of felonies to forfeit civic rights, § 922(g)(1) permissibly imposes a firearms disability "as a legitimate consequence of a felony

---

[4] Although Atkinson asserts that "*Heller* expressly rejected the notion that the Second Amendment right was a civic right," Br. 50, neither *Heller* or its successors even mention that term, and nothing in those opinions casts doubt on an analogy between civic rights and the right to bear arms.

conviction," *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 708 (6th Cir. 2016) (en banc) (Sutton, J., concurring in most of the judgment).

Compelling evidence confirms that fraud offenders in particular were not historically understood to have Second Amendment rights.  At the founding, crimes analogous to fraud—including forgery, embezzlement, and counterfeiting—were often classified as felonies punishable not just by disarmament, but by death.  The First Congress treated "forgery, [dealing in] forged securities, [and] counterfeiting" as capital crimes, *Folajtar*, 980 F.3d at 905 (first alteration in original) (quoting John D. Bessler, *Cruel & Unusual: The American Death Penalty and the Founders' Eighth Amendment* 56-57 (2012)); several states, including New York and Maryland, subjected forgers to the death penalty[5]; and contemporary English law similarly categorized "counterfeiting" and "embezzlement" as punishable by execution, *Medina*, 913 F.3d at 158 (quotation marks omitted).  "[I]t is difficult to

---

[5] *See* Thomas Herty, *A Digest of the Laws of Maryland* 255-56 (1799) (forgery punishable by "death as a felon, without benefit of clergy"); 2 *Laws of the State of New York* 74 (1791) (an individual convicted of forgery "shall be hanged by the neck until he . . . shall be dead"); *see also* 1 *The Laws of the Commonwealth of Massachusetts* 250, § 5 (1807) (forgery of bank bills may be punishable by death).

conclude that the public, in 1791, would have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms." *Id.* It follows that Atkinson, a convicted felony fraud offender, has no Second Amendment rights to assert.

## C.   Atkinson's Arguments Conflict with Binding Precedent

Each of Atkinson's arguments serves only to underscore that controlling cases foreclose his Second Amendment claim. First, although Atkinson urges the reversal of *Kanter* and *Hatfield*, his true disagreement is with the Supreme Court's definition of the Second Amendment as limited to law-abiding citizens. Second, his claim that the Second Amendment's scope hinges on predictive judgments as to a felon's future conduct is inconsistent with precedent and unworkable in practice. Finally, Atkinson's assertion that he "unwittingly committed" fraud disregards this Court's recognition that mail fraud necessarily entails fraudulent intent. Br. 19.

**1.** Atkinson devotes much of his brief to urging that this Court "revisit and replace" *Kanter* and *Hatfield*. Br. 7, 36-60. Those cases recognize multiple propositions: That "[f]elon dispossession statutes survive intermediate scrutiny," *Kanter*, 919 F.3d at 447, and that fraud

is "a serious federal felony," *id*. at 450, removing perpetrators from the class of "law-abiding, responsible citizen[s]," *Hatfield*, 925 F.3d at 951. *Bruen* clarifies that the first holding, that § 922(g)(1) satisfies heightened scrutiny, no longer governs the Second Amendment inquiry. 142 S. Ct. at 2126.  But *Bruen* confirms the continued importance of the second holding, which recognizes that fraud offenders are not law-abiding citizens.  That holding, in combination with the Supreme Court's conclusion that the Second Amendment protects only "law-abiding citizens," controls the outcome here.  *Id*. at 2122.

Atkinson's central argument is at odds not just with *Kanter* and *Hatfield* but also with Supreme Court precedent.  Dissatisfied with *Heller*'s determination that only "law-abiding citizens" retain Second Amendment rights, 554 U.S. at 625, Atkinson and his amici propose a test based on an individual's "dangerousness," Br. at 19. 37-60; *see also* FPC Br. 3-26.  But whether an individual is dangerous is a different question than whether he is law-abiding, and the latter question alone excludes Atkinson from the Second Amendment's scope as defined by *Heller*, *McDonald*, and now *Bruen*.  To the extent Atkinson believes that

those cases should have defined the Second Amendment's limits differently, his quarrel lies with the Supreme Court, not this Court.

In any event, Atkinson's proposed dangerousness test would not help him here. Under that suggested test, courts would ask whether a plaintiff "is likely to [be] more dangerous than any average person." Br. 6-7. In Atkinson's case, the answer is yes: This Court has recognized, based on precedent and empirical evidence, that "someone with a felony conviction . . . is more likely than a nonfelon to engage in illegal and violent gun use." *Kanter*, 919 F.3d at 448 (quoting *Yancey*, 621 F.3d at 685). So even under the test Atkinson proposes, his Second Amendment claim fails and the district court's judgment should be affirmed.

**2.** Atkinson fares no better in asserting that the Second Amendment entitles him to an evidentiary hearing at which the district court must review his post-conviction conduct and other "personal circumstances" to determine whether § 922(g)(1) can constitutionally be applied. Br. 19. The premise of Atkinson's argument is that whether an individual is part of the "law-abiding" citizenry depends not on what crime he committed in the past but solely on how he is likely to behave

18

in the future.  This premise is incompatible with precedent, unworkable in practice, and would not in any event support Atkinson's claim.

The Second Amendment permits Congress to disarm individuals based on their status as convicted felons.  *Heller*'s approval of "prohibitions on the possession of firearms by felons" would make little sense if the Second Amendment mandated a predictive inquiry concerning each felon's possible future conduct.  554 U.S. at 626.  This Court has accordingly recognized that Congress is not confined to the "case-by-case exclusions" Atkinson contemplates, and instead retains authority to impose "categorical disqualifications" on firearm possession.  *Skoien*, 614 F.3d at 641.  Taken to its logical conclusion, Atkinson's contrary approach would "require the government to make case-by-case predictive judgments before barring the possession of weapons by convicted criminals" — including violent offenders — "illegal aliens, or perhaps even children."  *Medina*, 913 F.3d at 160. Nothing in Supreme Court precedent or historical practice requires that anomalous result.  *Cf. Binderup*, 836 F.3d at 350 ("There is no historical support for the view that the passage of time or evidence of

rehabilitation can restore Second Amendment rights that were forfeited.").

Atkinson also pays no heed to the difficulties entailed in making "case-by-case predictive judgments." *Medina*, 913 F.3d at 160. As this Court has observed, Congress previously authorized the Bureau of Alcohol, Tobacco, Firearms and Explosives "to restore a felon's gun rights" if the agency determined that "'the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest.'" *Kanter*, 919 F.3d at 450 (quoting 18 U.S.C. § 925(c)). As the Court noted, however, "Congress abandoned that approach after finding that the dangerousness inquiry was a 'very difficult' and time-intensive task," *id.* (quoting H.R. Rep. No. 102-618, at 14 (1992)), and that "too many of these felons whose gun ownership rights were restored went on to commit violent crimes with firearms," *id.* (quoting H.R. Rep. No. 104-183, at 15 (1995)). These concerns apply with even greater force to case-by-case inquiries undertaken by courts, which "possess neither the re-sources to conduct the requisite investigations nor the expertise to predict accurately which felons may carry guns without threatening the

20

public's safety." *Id.* at 450-51 (quoting *Pontarelli v. U.S. Dep't of the Treasury*, 285 F.3d 216, 231 (3d. Cir. 2002)); *see United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) ("[S]uch an approach . . . would obviously present serious problems of administration, consistency and fair warning.").

Regardless, the district court properly rejected Atkinson's "suggestion that any individualized assessment would help him." SA10. Atkinson's complaint illustrates that his circumstances do not materially differ from those of Hatfield, who this Court identified as falling outside the category of "law-abiding citizen[s]" the Second Amendment protects. *Hatfield*, 925 F.3d at 951. Both plaintiffs claim to have behaved well after their convictions. The only apparent difference is that Hatfield maintained a "spotless record" for years longer than the period asserted by Atkinson. *Hatfield v. Sessions*, 322 F. Supp. 3d 885, 896 (S.D. Ill. 2018). And with respect to the impact of the criminal offense, Hatfield's conduct produced "a wrongful gain of only $1,628," *Hatfield*, 925 F.3d at 952, while Atkinson's crime involved a $6,000 fraudulent payment, a $15,000 criminal fine, and a related $45,000 civil settlement, SA15-16. Atkinson's sentence was also not

21

limited to probation, as Hatfield's was, *see Hatfield*, 322 F. Supp. 3d at 887, but included six months of home confinement, SA16, a punishment that reflects the comparative seriousness of his offense.  At a minimum, then, Atkinson has no stronger claim to qualifying as a law-abiding citizen than the claim the *Hatfield* Court rejected.

**3.** Atkinson does not advance his argument by contending that he "unwittingly committed" felony mail fraud.  Br. 19.  Atkinson now asserts that he "thought he was engaging in a legitimate business transaction" and "was all but duped into committing his offense."  Br. 27.  But in pleading guilty to mail fraud, Atkinson necessarily admitted to "a willful act . . . with the specific intent to deceive or cheat."  *United States v. Leahy*, 464 F.3d 773, 786 (7th Cir. 2006) (quoting *United States v. Britton*, 289 F.3d 976, 981 (7th Cir. 2002)).  Atkinson's attempt to disavow his guilty plea is inconsistent with his claim to a restoration of rights because it demonstrates that he does not feel remorse for his prior wrongdoing and thus is not meaningfully rehabilitated.

In sum, the district court correctly concluded that Supreme Court and Circuit precedent requires rejection of Atkinson's constitutional challenge.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

JOHN R. LAUSCH, JR.
*United States Attorney*

MARK B. STERN
MICHAEL S. RAAB

*s/ Steven H. Hazel*
STEVEN H. HAZEL
*Attorneys, Appellate Staff*
*Civil Division, Room 7217*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-2498*
*Steven.H.Hazel@usdoj.gov*

July 2022

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,230 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ Steven H. Hazel*
Steven H. Hazel

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2022, I electronically filed the

foregoing brief with the Clerk of the Court for the United States Court

of Appeals for the Seventh Circuit by using the appellate CM/ECF

system.  Service will be accomplished by the appellate CM/ECF system.

*s/ Steven H. Hazel*
Steven H. Hazel

# ADDENDUM

# TABLE OF CONTENTS

18 U.S.C. § 922 ........................................................................... A2

18 U.S.C. § 1341 ....................................................................... A3

**18 U.S.C. § 922**

**§ 922.  Unlawful acts**

. . .

(g) It shall be unlawful for any person--

(1) who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year;

. . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

## 18 U.S.C. § 1341

## § 1341. Frauds and swindles

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.